UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      **SOUTHERN DIVISION at LONDON**

CLIFTON WAYDE RIDGWAY,            )
                                  )
     Plaintiff,                   )
                                  )         Civil Case No.
v.                                )         6:13-cv-229-JMH
                                  )
CAROLYN W. COLVIN, ACTING         )         **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL            )             **AND ORDER**
SECURITY,                         )
                                  )
     Defendant.                   )

                              ***

     This matter is before the Court upon cross-motions for Summary Judgment [D.E. 15, 16] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits and supplemental security income. [Tr. 13-22].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

     The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

     1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 15]. Under step two, the ALJ found that Plaintiff's medically determinable

2

impairments of degenerative disc disease of the lumbar spine, cervical pain with radiation into the left shoulder, and affective mood disorder were "severe" as defined by the agency's regulations. [Tr. 15]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's medically determinable impairment of hypertension was a "non-severe" impairment. [Tr. 15-16].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 16-18]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform medium work except that Plaintiff was limited to frequent climbing of ladders, ropes, and scaffolds, frequent stooping, kneeling, crouching, or crawling, and occasional reaching in all directions, including overhead, with the upper, left extremity. [Tr. 18]. The ALJ found that Plaintiff was further limited in that he could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and walk a total six hours in an eight hour work day, sit a total of six hours in an eight hour work day, and that Plaintiff should avoid concentrated exposure to full body vibration and hazards, such as unprotected heights or dangerous machinery. [Tr. 18]. The ALJ imposed further mental limitations on Plaintiff in that he could

understand, remember, and carry out simple and some detailed instructions, he could concentrate and persist for two hour segments throughout a typical eight hour work day. [Tr. 18]. Further, Plaintiff could interact with co-workers and supervisors as needed, with the public only occasionally, and Plaintiff could adapt to reasonable work changes. [Tr. 18].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 21]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 21-22]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 22].

In this appeal, Plaintiff argues that the ALJ erred by relying on a medical opinion the ALJ assessed to have little weight, that the ALJ erred by giving controlling weight to the opinions of non-examining state agency physicians, and that the ALJ erred by not complying with the treating physician rule.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. §

4

405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was 51 years of age at the alleged disability date [Tr. 21] and has a high school education. [Tr. 21]. Plaintiff has past work experience as a correctional facility maintenance supervisor and correctional officer. [Tr. 21]. Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on June 23, 2010. [Tr. 13]. Plaintiff also filed a Title XVI application for supplemental security income (SSI), alleging disability beginning on June 23, 2010. The claims were denied initially and upon reconsideration. [Tr. 13]. Plaintiff requested a hearing with the ALJ, which took place on July 10, 2012. [Tr. 13]. The ALJ issued an unfavorable decision denying disability insurance benefits and SSI on August 10, 2012. [Tr. 22].

According to Plaintiff, he has chronic pain in his neck, shoulders, arms, hands, back, knees, and legs. [Tr. 274]. Plaintiff treats the pain with Naproxen, Propoxyphene, a heating pad, and hot baths. [Tr. 275]. Plaintiff claims that he has trouble dealing with crowds and crowd noises. [Tr. 285]. Plaintiff claims he has difficulty dealing with stress [Tr. 286] and also has difficulty following instructions. [Tr. 285]. Plaintiff also takes Cymbalta and Abilify to treat depression. [Tr. 52].

Plaintiff visited the Family Practice of Booneville for treatment of his medical impairments. On September 28, 2010, Plaintiff was treated for neck pain and muscle spasms, degenerative disc disease, bulging discs, and anxiety. [Tr. 305]. On August 19, 2010, Plaintiff was treated for left shoulder pain, lower back pain, degenerative disc disease, and mood disorder. [Tr. 317]. Plaintiff also complained of pain in his shoulder, back, and legs. [Tr. 391]. Based upon his complaints, Plaintiff was assessed with major depressive disorder. [Tr. 393].

An MRI of the lumbosacral spine on July 16, 2010 revealed degenerative disc disease at the L4-L5 with a left side disc bulge that displaced the left S1 nerve root. [Tr. 301]. An MRI of the left shoulder exhibited supraspinatus tendinosis without

evidence of a rotator cuff tear, subacromial/subdeltoid bursitis, and mild AC joint arthritis. [Tr. 302].

Plaintiff underwent a consultative examination with Southern Medical Group, Inc. on November 13, 2010. [Tr. 334-37]. A physical examination of Plaintiff revealed no problems with the musculoskeletal system, Plaintiff was able to rise from a sitting position without assistance and bend and squat without difficulty, and Plaintiff's grip was a 5/5. [Tr. 335]. The consultative examiner diagnosed Plaintiff with depression/anxiety. [Tr. 336]. The examination further revealed that Plaintiff had normal range of motion in all joints. [Tr. 337]. Based upon the examination, the consultative examiner determined that Plaintiff could "sit, walk, and/or stand for a full workday, lift/carry objects without limitation, hold a conversation, respond appropriately to questions, [and] carry out and remember instructions." [Tr. 336].

On December 7, 2010, Plaintiff underwent a consultative examination with Dr. Robert W. Genthner. [Tr. 339-48]. Dr. Genthner found that Plaintiff could adequately retain and follow simple instructions, he had a mild to moderate limitation in his ability to understand, retain, and follow detailed or complex instructions, he could adequately carry out and persist at a simple repetitive task without special supervision, his attention and concentration skills were below average, his

7

capacity to relate to employers and coworkers and work with others is below average, and his ability to deal with the public is below average. [Tr. 346]. Additionally, Dr. Genthner believed simple changes in routine were not likely to be overwhelming to Plaintiff, he would not have difficulty dealing with authority, he could adequately make simple work-related decisions, his ability to be aware of hazards was adequate, and he had a mild to moderate limitation in his ability to deal with stress and pressure. [Tr. 346].

Plaintiff also treated with Kentucky River Community Care, Inc. [Tr. 351-85]. Plaintiff received outpatient treatment and was diagnosed with major depressive disorder with moderate recurrence. [Tr. 358]. Following this diagnosis, Plaintiff returned for therapy sessions. [Tr. 361-85].

There is a medical source statement that the ALJ found to be "illegibly signed," but Plaintiff claims it is from Kim McIntosh. [Tr. 19; 386-89]. This source opined that Plaintiff could occasionally lift or carry 10 pounds, frequently lift or carry 10 pounds, could stand and/or walk less than two hours in an eight hour work day, that Plaintiff was required to periodically sit and stand, and that Plaintiff was limited pushing and pulling in the upper and lower extremities. [Tr. 386-87]. It was opined that Plaintiff could never climb, and only occasionally balance, kneel, crouch, crawl, and stoop. [Tr.

8

387]. According to this opinion, Plaintiff also had environmental, visual/communicative, and environmental limitations. [Tr. 388-89].

Kim McIntosh, an FNP, completed a medical source statement on August 3, 2011. [Tr. 409]. At this time, Ms. McIntosh opined that Plaintiff could only intermittently sit, stand, and walk, Plaintiff could occasionally carry 21-50 pounds, frequently carry 11-20 pounds, and continuously carry less than 10 pounds. [Tr. 411]. Based upon Plaintiff's diagnosis of left shoulder tenderness, back pain, and emotion problems, Ms. McIntosh opined that Plaintiff could only work 1-2 hours per day. [Tr. 411-12].

A medical source statement was completed by Dr. Mercado in preparation for Ridgway's application for long-term disability benefits from a private insurer. [Tr. 416-17]. Plaintiff was diagnosed with mood disorder, hypertension, back pain, and shoulder pain. [Tr. 416]. Plaintiff was assessed as having constant irritability, low energy, poor concentration, depressed mood, ability to tolerate crowds, and limited ability to tolerate stressful situations. [Tr. 416]. Based upon this assessment, it was unclear whether Plaintiff would be able to return to work where he had direct contact with inmates. [Tr. 417].

Plaintiff was also assessed an RFC by state agency physician, Carlos X. Hernandez. [Tr. 106-09]. Dr. Hernandez

9

opined that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, could stand, walk, and sit for six hours of an eight hour work day, and was unlimited in his ability to push or pull. [Tr. 107]. Plaintiff was assessed with postural limitations in that he could only frequently climb ladders, ropes, or scaffolds, he could only frequently stoop, and he could only frequently crouch. [Tr. 107]. Further, Plaintiff was limited in reaching overhead on the left side and should avoid concentrated exposure to vibration. [Tr. 108].

Vocational expert Ms. Joyce Forest testified at the hearing before the ALJ. [Tr. 57-64]. Ms. Forest testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 59]. However, Ms. Forest found that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 59-62]. Ms. Forest found that a hypothetical person could perform no jobs in the national economy if the ALJ gave complete credibility to Plaintiff's alleged impairments and the severity of those impairments. [Tr. 62].

In a typical day, Plaintiff gets up, takes his medication, listens to the news, walks around in his yard, and sits on the porch. [Tr. 280]. Plaintiff claims that he can walk 20 minutes without needing a break and can only pay attention for 10-15

minutes at a time. [Tr. 285]. Plaintiff claims that he has trouble bathing, putting on shoes and socks, and raising his arms. [Tr. 276]. Plaintiff is still able to drive, but claims it causes the pain to worsen. [Tr. 283]. Plaintiff sometimes attends church [Tr. 284], is able to do a minimal amount of shopping [Tr. 283], can do a small amount of household chores [Tr. 282], but does not prepare any of his meals. [Tr. 282].

**IV. Analysis**

Plaintiff cites three reasons the Court should reverse the Commissioner's decision to deny him disability benefits. First, Plaintiff claims that the ALJ erred by assigning little weight to the consultative physical exam performed by Dr. Ryan Owens and then using the opinion as the basis for determining Plaintiff could perform work at the medium exertional level. Second, Plaintiff claims that it was error for the ALJ to give controlling weight to the opinion of the non-examining state agency physicians. Finally, Plaintiff argues that the ALJ failed to properly apply the treating physician rule.[2]

Defendant responds that the ALJ did not rely on the opinion of Dr. Ryan Owens in the ALJ's RFC assessment, but, instead, the ALJ's RFC assessment is a reflection of the medical evidence as a whole. Next, Defendant argues that the ALJ properly gave

---

[2] Plaintiff's brief makes an additional argument, but it too claims that the ALJ did not properly apply the treating physician rule.

significant weight to the opinion of state agency physician, Dr. Hernandez. Finally, Defendant argues that the ALJ did not violate the treating physician rule because Kim McIntosh is a nurse practitioner, and, therefore, her opinion is not subject to the treating physician rule. Defendant further argues that the ALJ properly applied the treating physician rule as to Dr. Mercado because the ALJ incorporated all of the limitations suggested by Dr. Mercado. Each of these issues will be discussed in turn.

**I. The ALJ did not rely on the consultative examination of Dr. Ryan Owens.**

Plaintiff argues that the ALJ's opinion is flawed because the ALJ relied on the opinions of the state agency physicians, but the state agency physicians came to their conclusion based upon medical evidence from Dr. Ryan Owens, to which the ALJ attributed little weight.

The ALJ gave little weight to the medical evidence provided by Dr. Owens because it essentially showed that Plaintiff was normal. The ALJ found that this opinion was not supported by the medical evidence of record based upon the objective findings of the MRIs, which showed that Plaintiff had limited range of motion. [Tr. 20]. The state agency physicians did cite the medical evidence of Dr. Owens in formulating an RFC for Plaintiff. [Tr. 107, 109]. However, despite Dr. Owens claiming

12

that Plaintiff was "normal," the state agency physician relied, in part, upon the objective medical data provided by Dr. Owens and assessed Plaintiff with limitations. Furthermore, the reason the ALJ gave Dr. Owens opinion little weight was because he believed the findings did not comport with the MRI performed on Plaintiff's back and shoulders. [Tr. 20]. Based upon the medical evidence of record, the state agency physician accounted for limitations of the back and shoulder that Dr. Owens did not. [Tr. 107-09]. The state agency physician assed Plaintiff with postural limitations, manipulative limitations, and environmental limitations because of Plaintiff's degenerative disc disease and shoulder problems. *E.g.*, [Tr. 107] (assessing Plaintiff with postural limitations "due to DDD in LS & shoulder problems"). Therefore, the ALJ's decision is not inconsistent because the opinion of the state agency physician properly accounted for all of Plaintiff's conditions and the entire medical evidence of record, including the report of Dr. Ryan Owens. The Court cannot find that it is error for an ALJ to cite the opinion of a state agency physician that reflects a detailed review of all the medical evidence available.

**II. The ALJ did not err by giving significant weight to non-examining state agency physician, Dr. Carlos X. Hernandez.**

Plaintiff alleges that the ALJ improperly gave controlling weight to the opinion of non-examining state agency physician,

13

Dr. Carlos X. Hernandez. "[A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source)." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted).

All evidence from nonexamining sources is opinion evidence. 20 C.F.R. § 416.927(e). "The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3.

The ALJ gave significant weight to the opinions of state agency physician, Dr. Carlos X. Hernandez. The ALJ explicitly stated that the opinion of the state agency physician agreed with the overall evidence. [Tr. 20]. The ALJ stated that the clinical findings supported the state agency physicians opinion

14

that Plaintiff could sit, stand, and walk, and that the findings of back and shoulder problems supported the state agency physician's opinion that Plaintiff would have manipulative difficulty, limited in reaching, and would have problems with the left shoulder and arm. [Tr. 20].

The opinion of Dr. Hernandez is supported by the overall evidence. First, Plaintiff himself states that he is able to sit, stand, and walk. Plaintiff describes a normal day as involving sitting, and walking in the back yard. [Tr. 280]. Plaintiff testified at the hearing before the ALJ that he still walks for exercise. [Tr. 43]. Second, the objective medical testing in the record supports the state agency physician's opinion of Plaintiff's back and shoulder problems. An MRI of the lumbar region revealed degenerative disc disease with a disc bulge on the left side. [Tr. 301]. An MRI of the left shoulder revealed supraspinatus tendinosis without evidence of a rotator cuff tear, bursitis, and mild joint arthritis. [Tr. 302]. Therefore, the opinion of state agency physician, Dr. Carlos Hernandez was supported by the overall medical evidence, and the ALJ did not err in assigning the opinion significant weight.

> **III. The ALJ erred by failing to assign weight to the opinion of treating physician, Dr. Mercado; however, any error amounts to harmless error.**

15

Plaintiff argues that the ALJ failed to properly apply the treating physician rule to the opinions of Dr. McIntosh and Dr. Mercado.

> [A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "[The Court] will reverse and remand a denial of benefits, even though

16

'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

First, Plaintiff challenges the treatment of a medical source assessment completed by Kim McIntosh on April 4, 2011. Plaintiff alleges that it was improper for the ALJ to claim that this was an unidentifiable source because the hearing reveals that the ALJ knew who submitted the report. However, this is irrelevant because McIntosh is a nurse practitioner, not a doctor. [Tr. 354] (indicating provider as "Kim McIntosh, ARNP"); [Tr. 409] (signing degree/specialty as "FNP").

"Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation. . . ." 20 C.F.R. § 404.1502. A nurse practitioner is not an acceptable medical source, and, thus, the opinion of Ms. McIntosh is not entitled to the deference of the treating physician rule because she does not meet the definition of a treating physician. *See* SSR 06-03p, 2006 WL 2329939, at *2-3 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling

17

weight. . . . [Opinions from] medical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . are important and should be evaluated on key issues such as impairment severity and functional effects."). The ALJ was only required to consider the opinion of McIntosh, which the ALJ did. [Tr. 19-20]. Accordingly, the ALJ did not improperly apply the treating physician rule to the opinion of McIntosh, because the treating physician rule is inapplicable to McIntosh.[3]

Second, Plaintiff alleges that the ALJ failed to properly apply the treating physician rule to Dr. Mercado. The ALJ discussed the treatment notes of Dr. Mercado at step three of his decision, but did not discuss the treatment notes of Dr. Mercado when discussing Plaintiff's RFC and did not assign weight to the opinion of Dr. Mercado. It was error for the ALJ to fail to assign weight to the opinion of Dr. Mercado. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, the error was harmless.

There is no evidence in the record indicating that Dr. Mercado completed a mental residual functional capacity assessment. The only evidence submitted from Dr. Mercado is

---

[3] Furthermore, even if the treating physician rule applied to this opinion, the ALJ provided numerous good reasons for giving little weight to the opinion.

treatment notes and a completed form that was provided to Dr. Mercado by Plaintiff's long-term disability carrier. [Tr. 416-17]. The ALJ specifically mentioned the limitations included in Dr. Mercado's treatment notes and on the form submitted by Dr. Mercado. Specifically, the ALJ stated that, according to Dr. Mercado's treatment notes, Plaintiff had difficulty being in crowds, could not tolerate stressful situations, had difficulty interacting with others, has anxiety, has poor concentration, and has a poor ability to tolerate crowds and social situations. [Tr. 16-17]. In the RFC assessment, the ALJ included that Plaintiff could understand, remember, and carry out simple instructions, he can only concentrate for two-hour segments, public interaction would be limited, and can adapt only to reasonable work changes. [Tr. 18]. These limitations, included by the ALJ in Plaintiff's RFC assessment, are consistent with Dr. Mercado's findings.

Because the ALJ made findings consistent with the treatment notes provided by Dr. Mercado, the ALJ's failure to assign weight to the opinion of Plaintiff's treating physician, Dr. Mercado, is harmless error.

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. . . . There is . . . the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and

19

the failure to give reasons for not giving such weight
is correspondingly irrelevant.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Accordingly, the failure to assign weight to the opinion of Dr. Mercado does not amount to reversible error.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 15] be, and the same hereby is, **DENIED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 16] be, and the same hereby is, **GRANTED**.

This the 25th day of June, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge